NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILDCAT LICENSING WI LLC,**
*Appellant*

**v.**

**ATLAS COPCO TOOLS AND ASSEMBLY SYSTEMS LLC, GENERAL MOTORS LLC, FAURECIA AUTOMOTIVE SEATING, LLC, MAGNA INTERNATIONAL INC.,**
*Appellees*

---

2022-1303, 2022-1304

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-00891, IPR2020-00892.

---

Decided:  January 9, 2024

---

MEREDITH MARTIN ADDY, AddyHart P.C., Atlanta, GA, argued for appellant.  Also represented by BRANDON C. HELMS, BENJAMIN CAPPEL, ROBERT PATRICK HART, Chicago, IL; JEFFREY SALMON, Jeffrey W. Salmon Law LLC, Glenview, IL; BRAD M. SCHELLER, PETER F. SNELL, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York, NY.

BENJAMIN LEE KIERSZ, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, argued for all appellees. Appellee Atlas Copco Tools and Assembly Systems LLC also represented by WILLIAM ATKINS.

JOSEPH HERRIGES, JR., Fish & Richardson PC, Minneapolis, MN, for appellee General Motors LLC. Also represented by NITIKA GUPTA FIORELLA, Wilmington, DE.

DEBORAH POLLACK-MILGATE, Barnes & Thornburg LLP, Indianapolis, IN, for appellee Faurecia Automotive Seating, LLC. Also represented by CHAD S.C. STOVER, Wilmington, DE.

STEPHANIE P. KOH, Sidley Austin LLP, Chicago, IL, for appellee Magna International Inc. Also represented by NATHANIEL C. LOVE; SCOTT BORDER, Winston & Strawn LLP, Washington, DC.

———————————

Before REYNA, TARANTO, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Wildcat Licensing WI LLC appeals two final written decisions issued in related inter partes review proceedings. In those proceedings, the United States Patent Trial and Appeal Board concluded that the challenged claims were unpatentable as obvious. Wildcat contends that the Board erred by considering arguments and evidence not included in the initial inter partes review petitions, and by finding that the prior art disclosed all of the challenged claim limitations. Wildcat also contends that the Board improperly precluded it from entering certain evidence when it denied a set of Wildcat's discovery motions. We affirm.

BACKGROUND

Wildcat owns U.S. Patent Nos. RE47,220 (the "'220 patent) and RE47,232 (the "'232 patent"). The challenged patents involve systems and methods for a fastening tool that employs preprogrammed torque values. *See, e.g.*, '220 patent, Abstract, 1:47–55.[1] The claimed systems thus ensure an operator can fasten each fastener (e.g., bolt or screw) into position at the correct torque value. *Id.*

All of the challenged claims include "Claimed Torque Requirements." The Claimed Torque Requirements are recited in Claim 31 of the '220 patent, which Wildcat agrees is representative of the challenged claims. Appellant Br. 18. Namely, the claimed system must (1) measure the torque applied to the fastener at first and second fastening locations; (2) store "first and second predetermined torque values" in memory; and (3) compare the measured torque at each fastening location to the corresponding predetermined torque value that was stored in memory. *See* '220 patent, 14:25–64.

---

[1]    Both parties predominantly cite to the '220 patent and the underlying proceedings involving that patent, noting that the proceedings for the '220 and '232 patents both "contain[ed] the same evidence." Appellant Br. 5 n.4; Appellee Br. 4 n.1. We do the same.

Central to this appeal is one prior art reference: an article in a December 1993 IBM Technical Disclosure Bulletin, titled "Three Dimensional Tooling Position Sensing" ("IBM").  *See* J.A. 292–98.  IBM includes one figure depicting its disclosed system.



J.A. 297.  IBM discloses an electronic torque driver [11] linked to a microcontroller circuit [6].  J.A. 298.  IBM states that the microcontroller circuit [6] can "enable/disable the power to the torque driver [11]" and "sense[s] when correct torque is achieved by linking into a hall effect sensor in the driver 11."  *Id.*  The "controller may be programmed" such that an operator must "wait for the set torque to be achieved on each screw before moving onto the next screw." *Id.*

In May 2020, Appellees (collectively referred to herein as "Atlas") filed two petitions for inter partes review ("IPR") of claims 31–55 of the '220 patent and claims 26–49 of the '232 patent (collectively, the "challenged claims"). *Atlas Copco Tools and Assembly Sys. LLC v. Wildcat Licensing WI LLC*, No. IPR2020-00891, 2021 WL 5200230, at *1 (P.T.A.B. Nov. 1, 2021) ("*Final Decision*"); *Atlas Copco Tools and Assembly Sys. LLC v. Wildcat Licensing WI LLC*, No. IPR2020-00892, 2021 WL 5203286, at *1 (P.T.A.B. Nov. 1, 2021). Atlas' petitions asserted that IBM disclosed the three Claimed Torque Requirements of measuring, storing, and comparing torque values. Regarding the "measuring" torque requirement, Atlas argued that IBM's hall effect sensor measures torque. J.A. 1407. Atlas further argued that IBM's microcontroller disclosed the remaining two Claimed Torque Requirements of storing predetermined torque values and comparing the measured torque values to the stored predetermined torque values. J.A. 1406–07.

The Board subsequently instituted IPR on all grounds raised in the petitions. After institution, the Board resolved discovery disputes, received further briefing on the merits, and held a hearing on the merits. The Board issued final written decisions finding that IBM discloses the Claimed Torque Requirements and concluding that all of the challenged claims were unpatentable as obvious. *Final Decision,* 2021 WL 5200230, at *1, *21.

Wildcat appeals, making three principal arguments. First, Wildcat asserts that the Board erred by relying on evidence and argument that were first introduced in Atlas' IPR reply briefs. Second, Wildcat argues that IBM does not disclose the Claimed Torque Requirements. Finally, Wildcat argues that the Board improperly denied a set of Wildcat's motions for discovery and, as a result, erroneously precluded Wildcat from presenting evidence in support of its positions. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

STANDARD OF REVIEW

We review decisions related to compliance with Board procedures for an abuse of discretion. *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018); *see also Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1382 (Fed. Cir. 2023). Resolution of discovery motions and challenges to the responsiveness of a petitioner's post-petition argument and evidence involve compliance with Board procedures. 37 C.F.R. §§ 42.23, 42.52; *see Ericsson*, 901 F.3d at 1379; *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1339 (Fed. Cir. 2018). Whether post-petition argument and evidence presents a new invalidity theory implicates the Board's statutory authority and is subject to de novo review. *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1008 (Fed. Cir. 2023).

Obviousness is a question of law that we review de novo, with underlying factual issues that we review for substantial evidence. *ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1365 (Fed. Cir. 2016). Factual issues include the "scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). Substantial evidence is such evidence that a reasonable mind might consider adequate to support the Board's conclusion. *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012).

DISCUSSION

I. Atlas' Reply Briefs

We first consider Wildcat's claim that the Board improperly relied on certain testimony and evidence asserted by Atlas after it had filed its IPR petitions. In particular, Wildcat argues that Atlas presented new invalidity

theories and related evidence in its reply briefs. *See* Appellant Br. 40–41, 47–48; Reply Br. 16–19. We disagree with Wildcat.

It is well-established that the scope of an IPR is limited to the grounds set forth in the initial petition, 35 U.S.C. § 312(a)(3), making it improper for the Board to deviate from the grounds in the petition and consider late-raised theories of unpatentability. *Corephotonics*, 84 F.4th at 1002. But we have held that a petitioner's reply brief may not present a new theory of unpatentability in certain circumstances where the reply brief asserts that the challenged claims would have been obvious over the same combination of prior art identified in the petition. *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706 (Fed. Cir. 2020). In particular, we held a prior art theory in a reply brief was not new where the same aspects of the same prior art references were used to support the same invalidity argument made in its petition. *Id.*; *see Corephotonics*, 84 F.4th at 1009. Beyond the restriction that a reply brief must avoid introducing a new ground, which is a statutory constraint, a reply brief is subject to a second, separate restriction relating to compliance with Board procedures: a reply brief is limited to material that is responsive to the patent owner's arguments. *Corephotonics*, 84 F.4th at 1008.

Atlas asserted in its petitions that IBM's hall effect sensor "measures" torque. J.A. 1407. Wildcat responded that a hall effect sensor alone cannot measure torque. *See Final Decision*, 2021 WL 5200230, at *16. In its reply briefs, Atlas cited deposition testimony of its expert, Dr. Gregory Davis. J.A. 980–81. Dr. Davis clarified that a person of ordinary skill in the art would consider IBM's hall effect sensor to collect the data necessary to measure torque and thus form part of a torque transducer that can actually output a measured torque value. *See* J.A. 2487 (103:9–10). Atlas also introduced additional prior art

references regarding hall effect sensors' use in the measurement of torque. *See* J.A. 976.

As in *Apple*, Atlas' reply briefs did not introduce evidence involving a new theory, but merely confirmed Atlas' assertions in its petitions concerning the functionality of a hall effect sensor. *See Rembrandt Diagnostics*, 76 F.4th at 1382. Moreover, Atlas' citation to new prior art references was made in response to Wildcat's arguments on that point, to show "the knowledge that a skilled artisan would bring to bear" in reading the same aspects of the same references that were the focus of the petition. *Anacor Pharms., Inc v. Iancu*, 889 F.3d 1372, 1381 (Fed. Cir. 2018).

Under these circumstances, we cannot say that Atlas presented evidence or arguments in support of a shifting or new invalidity theory or went beyond responding to Wildcat's arguments. *See Apple*, 949 F.3d at 706. We hold therefore that the Board did not abuse its discretion by considering the evidence and arguments raised in Atlas' reply briefs.

## II. Claimed Torque Requirements

We next address the Board's findings that IBM disclosed each of the three Claimed Torque Requirements, beginning with the "measuring" requirement.

First, Wildcat argues that the "measuring" torque requirement is not disclosed by IBM. It asserts that IBM teaches the use of a mechanical, clutch-controlled tool that does not measure torque at all. *See Final Decision*, 2021 WL 5200230, at *16–17. Under Wildcat's interpretation, this clutch-controlled tool simply relies on a compression spring that causes the clutch to mechanically disengage when the fastening tool has approximately reached a preset torque. The Board rejected Wildcat's view and determined that IBM teaches the "measuring" torque limitation.

The Board's determination that IBM teaches the "measuring" torque limitation is supported by substantial

evidence, including IBM's disclosure and Atlas' expert's testimony. As the Board explains, IBM discloses "a screw torque sequence verification system." *Final Decision*, 2021 WL 5200230, at \*20 (quoting IBM, J.A. 298). IBM provides that "[t]he problem is to ensure" a series of screws "are tightened to a specific torque in a specific sequence." J.A. 298. IBM describes using a microcontroller "to sense when correct torque is achieved by linking into a hall effect sensor in the driver 11." *Id.* This is depicted in IBM's single image, reproduced above, showing a dotted line labeled "TORQUE" with an arrow pointing into microcontroller 6. J.A. 297. Once the microcontroller is properly programmed, IBM states that an operator must "wait for the set torque to be achieved on each screw before moving onto the next screw." J.A. 298.

The Board credited Dr. Davis' opinion that IBM's disclosure of a microcontroller linked to a hall effect sensor supports that IBM's system performs an electronic measurement of torque, rather than simply being a mechanical, clutch-controlled system. *See Final Decision*, 2021 WL 5200230, at \*21 (citing, among other testimony, J.A. 2489–90 (105:10–106:23)). Dr. Davis opined that a microcontroller is "capable of making decisions" and "comparisons with sensed data," allowing it to "do a more intelligent job of controlling" than could be done by an imprecise mechanical tool. J.A. 2489 (105:17–21). Dr. Davis' testimony and IBM's disclosure, including its references to sensing a "correct torque" and achieving a "set torque" at a particular fastening location, support the Board's conclusion that IBM teaches more than simply mechanically disengaging when the same torque has been reached for any fastener. We hold that the Board's determination that IBM teaches "measuring" torque is supported by substantial evidence.

Second, Wildcat argues that the Board's finding that IBM's discussion of "set torque" discloses the claimed requirement of storing first and second predetermined torque

values in memory is unsupported by substantial evidence. Appellant Br. 61. Wildcat asserts that IBM teaches a clutch-controlled tool that has no need for a predetermined torque value. *Id.*

We agree with the Board that IBM provides that its microcontroller [6] may be programed such that an operator must "wait for the set torque to be achieved to each screw before moving onto the next screw." *Final Decision*, 2021 WL 5200230, at *20; *see also* J.A. 298. Dr. Davis explains that a microcontroller with "RAM"—*i.e.* "random access memory" or temporary storage space—allows the system to "move the decision process in[to] the microcontroller to gain precision." J.A. 2490 (106:6–15). In other words, the microcontroller is programmed with the "set torque" so that it is able to confirm that "set torque" has indeed been reached by the torque driver. We conclude that the Board's finding that IBM discloses having the set torque value stored in order to determine when that set torque has been reached for a particular screw is supported by substantial evidence.

Third, Wildcat argues that the Board failed to address the "comparing" limitation. Appellant Br. 56. We disagree. The Board discusses the parties' arguments regarding the "comparing" limitation and cites to evidence relating to this limitation. *See, e.g.*, *Final Decision*, 2021 WL 5200230, at *17–18. While the Board does not conduct an explicit analysis of this claim limitation, we may affirm the Board "if we may reasonably discern that it followed a proper path, even if that path is less than perfectly clear." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (quotations omitted). That is the case here. *See* J.A. 2488–89 (104:21–105:9); *see also Final Decision*, 2021 WL 5200230, at *21 (citing the same passage of Dr. Davis' testimony). As Dr. Davis observed, "comparison" is logically necessary for the system to determine whether the "sensed torque" is the same as the "set torque." *See* J.A. 2484 (100:15–25). The basis for the Board's finding that IBM discloses the

"comparing" limitation is reasonably discernable and supported by substantial evidence.

### III. Wildcat's Discovery Motions

Wildcat contends that the Board's denial of a set of motions for discovery was error because it effectively barred Wildcat from submitting evidence and argument during the IPR proceedings.

Wildcat moved in each IPR "for Additional Discovery Under 37 C.F.R. 42.51(b)(2) and for Authorization to Compel Production of Additional Discovery." J.A. 1160. Through these motions, Wildcat sought additional discovery from various entities, including Atlas and non-party entities. *See* J.A. 1169. Significantly, Wildcat acknowledged that it was "already in possession of most of the requested documents," J.A. 1168, and even had the permission of one non-party to use their documents in the IPR proceedings, J.A. 1169. These documents had been produced in a co-pending district court litigation under an operative protective order. J.A. 1168.

The Board denied the motions to compel. J.A. 1024. Among other factors, the Board determined that Wildcat had not shown "that it cannot generate equivalent information by other means, such as by using the district court's protective order to ask the district court to use the documents requested in the motions and enter only those documents in these proceedings that tend to show nexus, commercial success, and copying." J.A. 1038. Wildcat requested rehearing in both proceedings to allow discovery. J.A. 1014. The Board denied the requests. J.A. 787.

We are not persuaded by Wildcat's assertions. Wildcat was not precluded from seeking permission from the district court to submit documents available to it under a governing protective order in the district court litigation. Nor did Wildcat ask, outside the context of a motion to compel discovery, for the Board's permission to file under seal the

documents in its possession that were still subject to the district court's confidentiality order. Under these circumstances, we cannot say that the Board abused its discretion in its resolution of Wildcat's discovery motions.

## CONCLUSION

We have considered Wildcat's other arguments and find them unpersuasive. We hold that the Board did not abuse its discretion in its consideration of arguments and evidence submitted after the IPR petitions or in its resolution of Wildcat's discovery motions. The Board's findings that the prior art disclosed the disputed claim limitations is supported by substantial evidence. Thus, we affirm the Board's final written decisions concluding that claims 31–55 of the '220 patent and claims 26–49 of the '232 patent were unpatentable as obvious.

## AFFIRMED

### COSTS

Costs to Appellee.